Good morning. May it please the court, Timothy Delahunt for Appellant, Mt. Hawley Insurance Company. The employer's liability exclusion, primarily at issue here, begins with Section 1, which sets forth the scope of the exclusion. It applies to injury to an employee of any insured. There's no dispute that that is met here. The second clause, 1A, the subservient clause, does not undo or change or delete Section 1. It's read in conjunction with it. And that is the section, the subsection, that specifies that the injury must occur in the course of employment for that insured. And there's also no dispute in this case that that is met. The dispute is about what the any in Section 1 means or, as it happens, does not mean. The decision, in effect, renders the any or converts it into a the. And that, in effect, undoes the scope of the exclusion. And I do not believe we are in a legally novel case here. I believe there is case law that guides this appeal, starting with this court's decision in Endurance, the Century Specialty, which makes the specific point in a similar exclusion that any cannot be rendered annulled. It wouldn't necessarily be rendered annulled, right, because it could be we're talking about an employee of any insured, but if it's in the course of employment by the insured, meaning the one claiming coverage, there's no coverage. So any would still do some work there in the sense that you're just talking about an employee of any one insured under the policy. But when we talk about arising from employment, we care about who's making the claim for coverage. I agree that it doesn't actually render it annulled. Now, the case law speaks, uses that term, and so I'm going to use that term and follow the case law. It renders, to be more precise, it renders it a the or a the. Right, because it would be the equivalent of saying an employee of the insured arising out of in the course of employment by the insured. That's right. But the case law also indicates that some insurance companies write contracts that say an employee of any insured arising out of in the course of employment by any insured, and so they use any in both cases just to avoid that confusion. And so your interpretation would render the the and any, right, it would be like that. And so we just have to decide whether this is more naturally read to be like any any or like the the, right? Right. One of the errors in the decision that I point out is that the decision compels this exclusion to fall into a category of other exclusions is how they're drafted. And I believe that leads to an incorrect result because you, the court is, and the parties can apply this particular language as written. And there's a there is a tremendous variety of exclusions, similar exclusions in the marketplace, particularly in New York, and that's a product of the labor law, you know, and I and I can, you know, there's weeds to get into as to why. And in other jurisdictions this may not come up. But, actually I'm curious about the weeds. So, right, so is it possible to infer based on the context that actually Reedy should get coverage because Reedy's workers' compensation policy would only apply to its own workers, and so it wouldn't make sense to exclude people working for the subcontractor? Well, Reedy does have coverage and with its own policies. Now subcontractors in New York often have CGL policies that, in effect, remove labor law coverage. And it's not a secret. They're not improper. The New York courts in particular have held that those policies are perfectly valid. It's a marketplace function. For a subcontractor to purchase a policy with full labor law coverage comes down to market availability and tremendous cost, and a lot of insured subcontractors, they buy on price. But the workers, the observation, the decision that the workers, these exclusions are intended to avoid duplication of workers' compensation policies, that may be very well correct in multiple other jurisdictions. It's not really correct in New York, and the workers' compensation claim is covered by a separate type of policy, a workers' compensation policy, also an employer's liability policy. This case involves CGL coverage, and so there's no instance where a plaintiff would bring a workers' compensation claim in a labor law action. That's administrative proceeding completely separate. So in New York, these employer liability exclusions, the work that they do is if they're a broad the, the, or exclusion, well that's a narrow exclusion, I'm inverting it. If it's a the, the, then that in our parlance is a full labor law coverage policy, because the employer will not be a direct defendant, but it will be invariably impleted on a contraction identification claim. And the way that the standard the, the exclusion works in the net effect is that contraction identification passing is covered. When you have a, a broader exclusion, meaning narrower coverage, such as the exclusion at issue here, the net effect can be to remove the labor law coverage. And that, and again, I come back to that's a function of marketplace and, and the policies that are available. And so this policy applies in that manner. And, and, but, but I mean, I think you just said that in the New York marketplace, we have both types of coverage, right? So like that doesn't answer the question as to, like there's some obvious answer as to what the parties would have intended for the scope of this provision. The parties to this policy, really is not a party to this policy. It's claiming to be an additional issue. The parties to this policy are Mount Holly and Vanquish. And, and, and those parties, when, when this policy, a policy with this type of exclusion is offered and purchased, then the parties, Mount Holly certainly knows it does not afford labor law coverage and Vanquish knows or should know that it does not. And so. But what difference does that make? What, what, what is Reedy supposed to know? What does Reedy, well, an additional insurance such as Reedy will, will enter into a subcontract that requires additional insurance coverage. But what happens is, does Vanquish follow through on that? Now Vanquish did follow through in the sense that it purchased a CGL policy and it has an additional insurance endorsement, but Vanquish purchased a CGL policy that has in effect, no labor law coverage for an entity such as Reedy. So an entity such as Reedy would have wanted the coverage, a different form of coverage than the one you're asserting they have. I'm sure they would have, and that's a very common instance. And, and the remedy is a breach of failure to procure insurance claim, which is a separate claim that's brought in the underlying action. And it, and it has a remedy. But yes, that's, this is a very common. So you're sure that you're sure they would have wanted the coverage? I mean, I know that under these circumstances they do, but it does seem like it is available in the marketplace to get workers compensation coverage that would cover the employees of a subcontractor. CGL coverage. So they could have gotten that. Yes, they could have. I don't know if they did or didn't. Maybe it's outside the scope of this case, but they could have. So it doesn't give an answer to what this necessarily must be. And if that question, I should point out that Reedy is fully protected. Reedy in a vacuum would have wanted all the coverage available, hypothetically in the world, but Reedy was fully protected by his own insurance. It's, it's, it's today, it's merchants that would want the Mount Holly policy to have been broader, but, but it's not. And so what are the implications of that? So if you're saying that actually given the legal requirements, Reedy would have wanted to be covered for this kind of an injury, then to the extent that we think it's ambiguous, doesn't that provide us some information about the intent of the parties? Well, you know, as I argued in the brief, I don't think there's a proper ambiguity analysis here, because if, if the net result is to change that any functionally into a the, then that's not a matter of ambiguity because. Right, so you're saying it's unambiguous because it says an employee of any insured. And then when it refers back by saying the insured, it means, you know, the insured among the any. And so the referent is any, and so it basically is the equivalent of using any twice. Right. And you have to give that. But let's say we think it's ambiguous because it's possible that an employee, it talks about an employee of any insured, but then talks about employment by the insured requesting coverage. Like if the, if it said an employee of any insured arising out of and in the course of employment by the insured requesting coverage, you would say, well, that's clear that it only applies to the, the assured seeking coverage. Right. So if we think that that makes it, that possibility kind of makes it ambiguous, why isn't this kind of context about what Reedy would have wanted or what the legal requirements were instructive about what we think the parties intended to accomplish? It's, it's, I would say it's not instructive because it doesn't lend, it does not meet the analysis of applying this language. If, if the court wishes to consider, you know, expectations of parties, then I, then I would come back to, well, the parties to the contract itself, what were their expectations? And, and Vanquish purchased a policy with this narrower scope of a broader exclusion. And I come back to, well, what would Reedy have expected? I don't know what Reedy would have expected. Reedy, I will presume that Reedy wanted, again, all the coverage available to all of its subcontractors without any exclusions or any operable exclusions, but that's, that's not the, the reality of the policies. And so to come back to the, the, the contracting marketplace, the general contractors in New York, bigger isn't necessarily better, but there are more conscientious general contracting companies. If you take a big general contracting company like Turner, let's say, they have, they have their own attorneys that will police the subcontractors to make sure that they, they pay for, procure and pay for very expensive policies with broad labor law coverage. And they will not hire a subcontractor until that's proven that they, that subcontractor has that coverage or will fire a subcontractor. But more often than not, once, once the general contractor submits the contract to the subcontractor and it has the insurance language that the sub, the general contractor wants, they, they, they wash their hands of it until something bad happens. And then when, when there's an injury, then, then the general contractor typically will find out what kind of policies that subcontractors actually have. Right. I can ask one more question just about the other argument about a connection with their general supervision of your work. So here, the claim was that Reedy was liable because of its negligent supervision of the subcontractor's work, right? There's another significant element to this, to that. And so then, then the, the liability actually arose from a settlement of that claim, right? A settlement agreement in which Reedy agreed to settle the claim in exchange for a payment. Merchants and other carriers ultimately settled the underlying labor law cases. Had they not, they would have proceeded to trial and then it would have been a matter of those insurers paying a judgment. But you end up in the same place. You end up in the same place. Right. Okay. So if liability arises from, so the liability arises from the settlement of a claim that Reedy negligently supervised the subcontractor, right? Well, the settlement was made before the negligence determinations that- No, this is no factual finding, but the allegation is that Reedy negligently supervised the subcontractor, right? I would say that the complaint, the plaintiff's complaint- The complaint says- Would, would embrace that, that allegation, but it embraces every other theory of liability. And in the labor law, it's absolute liability. So how does the subcontractor's employee get liability on the part of the general contractor, but for the idea that the general contractor was negligently supervising the subcontractor? Two, two ways immediately come to mind. One is it's absolute liability under the labor law. So if you're the general contractor on the site and there's an elevation related injury such as here, falling materials, the liability is fixed on the GC, the general contractor, without regard to negligence. Without regard to negligence, but it is because you are the general contractor and therefore have a responsibility to supervise the subcontractors, right? Yes, that's correct. And, but the facts of, actually the facts of this case perfectly illustrate how a general contractor can be liable in different ways. Because here, Reedy was on site and certainly may have been supervising the Vanquish employees in some sense. But here, the decision to keep this old decorative plaster ceiling had nothing to do with Vanquish. Reedy was a part of that discussion. Yeah, I get that. But that would be to say that Reedy should not be liable because the injury is not attributable to their supervision, right? That's like a merits question that would have been determined if they didn't settle. There is some overlap between, I mentioned the contractual indemnification claim, that Reedy would bring against Vanquish. There's some overlap between that claim and coverage. Because the plaintiff doesn't frankly care about Vanquish and whether, what Reedy did with Vanquish. They have their labor law statutory cause of action against the GC and the owner. When it comes to Reedy trying to pass the liability, its statutory liability down to Vanquish, Reedy will allege that all of the, that's where negligence comes into play and fault. The plaintiff, not necessarily. And so Reedy will argue that we were just the GC, we were just, we had no control over the means and measures. Right, which means that our supervision of the subcontractor should not lead to a liability because here the injury had a different cause. Right, that would be their argument. Right, and then. But here they settled the claim that there was something about their supervision that should lead to liability, right? The settlement really is born of the realities of the labor law exposure. In labor law actions, I mean, they do go to trial, but they vary. They are way more often settled because of the absolute liability. And so if here, if the injuries are significant, the bar. I mean, so let me just ask this question. So if in fact it had proceeded to trial and there wasn't a settlement, if there was a liability, it would be based on the idea that Reedy has absolute liability as a general contractor because it couldn't show that there was a cause other than its supervisory role as the general contractor of the injury, right? Reedy would have been. I mean, you're saying if it had gone to trial, there would be a determination about whether the injury was caused by the supervision or not, right? It wouldn't play out that way in the underlying labor law case. And I'm not a labor law lawyer. I'm a coverage lawyer. But, you know, my world, I'm in that world, of course. And what would happen is if there's no question that Reedy was the general contractor, which there wasn't. And there's no question that the mechanism of the injury was falling material, which there wasn't. Reedy's liability is absolutely fixed. Whether it was negligent in supervision, whether it was independently negligent, whether it was not negligent at all. Okay. So I guess I have this question. So let's say it went to trial and there's a decision on the merits that resembles what you just said, that there's absolute liability because you're a general contractor. And then liability is imposed on Reedy. And then Reedy wants to be covered under this provision. Would you say under those circumstances, the liability arose in connection with the general supervision of the work? Well, that's moving outside of the exclusion into the additional insurance. Yeah, it is. That's why I said it's the other argument. And that would be an issue of fact. So even if it went to trial and you had a merits determination where the trial court determined everything it needed to determine to impose liability, you're saying you still wouldn't know the answer to whether there was coverage? No. In that instance, if that had happened, then those findings would have bound and dictated the results here. Okay. So if it is based on this absolute liability idea and a court says the general contractor is liable, that would be in connection with their general supervision of the work? That issue would be tried on the contractual indemnification claim by Reedy against Vanquish. So you're saying there always needs to be a separate trial on the indemnification claim? But even if the whole thing went to trial and there are all sorts of factual findings about all of the circumstances of the accident and the liability, you still wouldn't know whether it was in connection with the work? I would say almost always. Sorry, the supervision of the work. Right. If an underlying action goes to trial, all the way through trial, then in most instances, if there are coverage questions that depend on that, then if there's a declaratory judgment action, it will be disposed. There'll be a winner and loser based on those findings. If there's a settlement of the underlying action before those necessary findings are made for resolving the coverage dispute, then it is theoretically possible, and it does happen, and the decision acknowledges this, that the court in the declaratory judgment action, this court, would try those issues in order to get those findings. So basically... I understand. That's why I thought your argument was that the settlement agreement short-circuited the determination as to whether the liability arose from the supervision. But you just told me, even if it went to trial all the way, and the trial court made all the findings it needed to make, we still wouldn't know the answer. So that seemed like a different argument. It would have depended on... I guess I have this question, which is I appreciate these nuances about absolute liability under the statute and whatever, but just as a general matter, if you have a settlement agreement to settle a claim that Reedy is liable because of its supervision of the work, and why isn't that a liability in connection with Reedy's supervision of the work? If in this action, we were trying that issue... And I'm not speculating because the parties made an evidentiary submission to the district court, which the judge found to be moot. Reedy will allege that its liability to the underlying plaintiff, the only predicate for that was its general supervision of the Vanquish employees. What Vanquish would argue, what Mount Holly did argue is, in this particular case, that is not true because the ceiling fell based on decisions that Reedy made that had nothing to do with Vanquish. That would be... Right, but then there wouldn't be a liability, right? So if in fact the injury occurred because of something that had nothing to do with Reedy's supervision of the work, there shouldn't be a liability, right? There would not be coverage. Yeah. Right. Could be a liability. But why would there be a liability? This is an overlap because what Vanquish... If a trial court had determined, if this was not settled and the court had determined that actually the injury was caused by a decision that the subcontractor made about which Reedy had nothing to do and there was nothing about its supervision that would have prevented it from happening at all, then there wouldn't be a liability, right? In that scenario, Vanquish would be liable to Reedy on the contractual indemnification claim. And because in that scenario, it was determined that Reedy... Did nothing to... So you're saying there might still be a liability because the legal framework imposes an absolute liability to the general contractor because they supervise, but if in fact there's a determination that nothing about their supervision caused the injury and it was caused by the subcontractor, the subcontractor would have to indemnify them? Right, that's the... Okay, I get that. But that means that the claim itself would be that there is a liability... That there would be a liability based on the supervision. It's just that you would be indemnified for it by the subcontractor. That's right. And Vanquish would try to defend that on the facts to say, no, this accident occurred not out of general supervision, but your own, Reedy, your own independent acts. And that's, of course, all these issues are if the exclusion doesn't apply in the first place. Yeah, I get it. Okay, I was curious about it. Thanks very much. Okay, thank you. Good morning, may it please the court. Richard Galbo for Reedy Contracting Group and Merchants Mutual. I just, I think to follow up on the colloquy we just had here, I think one point I want to make is that the decision to maintain the existing ceiling was not Reedy's decision. It was the landlord and the tenant to maintain that. Reedy had nothing to do with that. They were contracted to do the demolition. They delegated the entirety of the work to Vanquish. I don't really care because I don't think we're adjudicating that question. Right. So my interest was just about how to read the contract. And it seems to me that the claim that's being made in litigation is that Reedy should be liable because of its supervision of the work because they do allege that it's negligent. And so then if there's a settlement of that claim that prompts liability, it seems to me that's still a liability in connection with the supervision of the work. Do you agree with that? Absolutely. And I will agree with it not only on behalf of my client, but one of the three plaintiffs actually had obtained a judgment on liability under 240 prior to trial. The other two just never moved but would have gotten a directed verdict on that. On the labor law, 240, strict liability claim by virtue of Reedy's status as the general contractor. And if the liability is only based on their status as a general contractor, is that still in connection with their supervision? Or is the status as a general contractor different from the general supervision of the work? No, it isn't different here because they delegated the entirety of the work to vanquish. They were not directing and controlling the work. And the liability arises by virtue of their status as the general contractor. Okay, I get that argument. But before we get to that, we have to apply the exclusion. And so your view is, it says an employee of any insured, which you acknowledge includes vanquish. And then it says, so an employee of any insured arising out of and in the course of employment by the insured, you're saying even though the insured seems to refer back to any insured, it actually only means ready. Yes, and the... I mean, why would that be? So just grammatically, if I said, if any judge asks you a question, you should answer the judge. It would be pretty clear. I'm talking about all three of us, right? Even when I refer to the judge. But in this situation, this is a term of art. These aren't words that are just chosen by happenstance. I don't know if it's a term of art, right? And it has... The case law seems to say there are some contracts where it says an employee of any insured arising out of employment by any insured, which would avoid the conviction because it's clear it would apply to any of the insured. And there are contracts where it says an employee of the insured arising out of and in the course of employment by the insured, which would avoid the ambiguity. So when it says any, any, we would agree that it applies to the general contractor and the subcontractor. And when it says the, the, we would agree that it applies only to the party requesting coverage. So the question here is not that the insured has an inherent meaning everywhere and for all time. It's about what it means in the context of the contract. And we have to decide whether an employee of any insured arising out of employment by the insured has the meaning of any, any, as opposed to the meaning of the, the, or vice versa, right? Yes. And when the courts looked at using the word the insured, such as in the Hastings case, it defaulted to the separation of insured provision and said, we have to, when you're, when you're only modifier of insured is the, we have to. But it depends on the context, right? So if I said to you, when chief judge Livingston asks you a question, you should answer the judge. The judge refers to one person, right? But when I say if any judge here asks you a question, you should answer the judge. I'm referring to all three of them, even with the word the, right? Yes. So it makes a difference as to what the insured, what the referent of the insured is, right? I don't think in this context, it does because you're, you're talking about employment by the insured as a phrase. And you are. No, I'm not. There's a, there's a whole sentence, an employee of it. This policy does not apply to bodily injury to an employee of any insured arising out of it in the course of employment by the insured. So if I interpret that whole sentence. Or performing duties related to the conduct. Yeah, I understand. There's another clause, but it's not.  Yeah, we're talking about the employment. So if the whole sentence says, this policy does not apply to bodily injury to an employee of any insured arising out of it in the course of employment by the insured, it's the case where I say, if you get a question from any judge, you should answer the judge. And that refers back to any judge, which means it applies to all three. How you should treat all three. Ask you a question. And in this case, it would apply to employment by any insured who employs the employee. That is one of the interpretations that Judge Crawford in the district court gave to this language. But he also said, if we looked at the case law and the separation of insurance provision, that you can also reasonably interpret it to mean that it only applies if Reedy was the employer. And so I've looked at that case law, right? And the case law is looking at the context of the provisions. You agreed with me that if the way it was written would be an employee of any insured arising out of employment by any insured, then it would mean any. It would refer to both Reedy and Vanquish, right? And if it said the, the, it would refer only to the one insured requesting coverage. So all of the case law is interpreting it in the context of the meaning of the language in the provision. And so it doesn't seem to me like there's any decision that says whenever it says the insured, even if the context indicates it's referring to any, it's referring back to the phrase any insured, it must only mean the one. And I don't understand why we would have such a rule, even if it did exist. In Hastings, it was a mixed exclusion where it said bodily injury to an employee of any named insured in the course of employment by the insured. Okay, which, so what's the, so that's the Hastings? So it flips the the and the any to the other side. And he's, and again, a mixed thing. And the court didn't go through an analysis of the context of that. I mean, actually, if you flipped it, then I might agree with that, right? If it says an employee of the insured arising out of and in the course of employment by any insured, then the predicate is you're talking about an employee of the one requesting coverage because the the is first. So the main referent is the insured, right? So flipping it makes a difference. But if you're saying it doesn't apply to an employee of any insured arising out of employment by the insured, all of a sudden the insured is referring to the any, right? It's just the way the language works. Well, it's one interpretation out of two, I think.  And I think it's fair to say. I guess I'm asking you, so that if that seems to me the more natural interpretation, why is it not? You see, your answer seems to be, you think there's case law that says whenever it says the insured, regardless of the context, it must refer only to the one insured requesting coverage. We don't have cases which have talked about the context beyond applying the rule with, you know, otherwise you're right reading out the separation of insured provision. Otherwise what? You're reading out the separation of insured provision. In this court's decision in employers versus of Wassa versus Harleysville, when they're applying the separation of insured provision, they said these referring to a specific insured, but while not necessarily to the named insured. So we have to default to the rule that we refer to the party requesting coverage, which in this case is reading. No, I agree, which is why I said, if it said an employee of the insured or rising out of it in the course of employment by the insured, we'd understand that to refer to the one requesting coverage, but it says any. So that's what I think makes it different. Counsel, let me ask you a question unrelated to this thread that goes to the 3420 analysis. We haven't really been talking about, but just as a factual matter, Mount Holly says in their brief that the settlement and the underlying liability claim by the three workers has been completely paid, that that is completely resolved. There are no outstanding issues. Is that right? That is correct. OK, thank you. Yes, the actually the this case three, well, two of the three were settled during the course of trial two weeks into the trial and it was significant exposure and the claim settled for. Nine million dollars, there's no reservations or anything open. No, not at all. So this is this is down to a fight between the two insurance companies at this point and the point that somehow 3420 can't be asserted because, you know, the only party left in interest is merchants, I think is disingenuous. When we when this DJ was brought, there was significant exposure beyond the policy limits for really that it had with merchants. It. And we've said that even when it's a dispute between two insurance companies, the real party interest is still. Yes, as of last November in Midvale. Exactly. The endurance policy exclusion argument wasn't raised until November 2022. That was 10 years after the disclaimer of coverage. And I know you say that that was too late, but when should it have been raised? Well, there should have been at least been a reservation of rights when the disclaimer was issued on the employer's liability exclusion back in 2013. And, you know, Mount Holly had the endurance policy. They had to refer to it because it was the trigger for who was an additional insured under their policy and had knowledge of what exclusionary language was in that policy, never raised it and was never on anybody's radar. And 3420, the purpose is to give people adequate notice to go forward and responding to that exclusion didn't occur until this summary judgment proceedings in the D-Day action. Thank you, Counselor. Thank you. We'll hear rebuttal. Thank you. Going backwards, with respect to the real party and interest issue, it's not a matter of disingenuity or any of those considerations. It's a statutory analysis and New York law is clear that that statute is not for the benefit or protection of insurance companies, other insurance companies. There is no way to make anyone but merchants the beneficiary of the decision. And that is... I mean, Reedy is a party to this case, right? So they are concerning their own contractual rights. Right. Or its own contractual rights, right? Well, that's correct. But the statute is a remedial statute for the protection of insurance. And when you're talking about 3420D, when that is... You're saying that even though Reedy bargained for these rights under the contract, it shouldn't be able to enforce them because it has insurance coverage anyway. That's true. But here's how this would play out. That is what you're saying? That Reedy does not get to enforce its rights under the agreements that it signed? No, I am saying that those rights essentially evaporated because that statute is for the protection of Reedy if it needed it. And so had Reedy... Let's hypothetically, had Reedy not had enough coverage for the settlement, it would still be here today trying to argue that there's coverage. But Reedy had sufficient coverage. It was fully protected. It did not need the statute to protect it. And when you're talking about 3420... Usually when you have excess liability coverage, there'll be overlapping coverage if one insurer might pay and another insurer might pay. And there might be reasons why... First of all, I don't know if Reedy has to prove that there are reasons why it matters whether one covers or the other covers as long as it has contractual rights. But there often are reasons, right? Because you might have an annual cap on coverage from one insurance and not another insurance and so on. It would make a difference which insurer is paying because it affects your rights under the contracts. So the idea that just because they have another insurer, they don't get to get the benefit of the contract they signed, I mean, it seems very counterintuitive and also contrary to what we've said in prior cases. This 3420D is counterintuitive in a lot of ways. And there's a difference between... That's absolutely correct. Sophisticated insured will have layers of coverage and some apply and priority of coverage might be an issue and the insurance companies may be looking at each other. Saying you're first, you're second, you know, I'm out, whatever it might be. 3420D is a very particular circumstance because when we're discussing 3420D, when that's the dispositive statute, it means that the policy did not cover, was not supposed to cover. And we're not going to get to this argument unless we get past the initial exclusion, right? So I talked about how perhaps the more natural reading of any insured arising out of the course of employment by the insured means no reference back to any. And opposing counsel said it's actually... It's a term of art though that when it says the insured, we should understand it to mean the insured requesting coverage. So what about that? I guess the insured is not... I would not say it's a term of art. It is a common conjunction in insurance policies, just as any insured is and the case law addresses those terms. And when counsel said there are no cases, I would disagree because the NADCOS case from the New York Court of Appeals... Sorry, which one? NADCOS, N-A-D-K-O-S. That is the only case involving this exact language. And the New York Court of Appeals... Which was not an issue in this case. I mean, it doesn't address the ambiguity we focused on. It does not. And the reason why it does not is because the parties to that action and more importantly, the courts never questioned that the exclusion applies on the merits. Yeah, but in that kind of case, the court doesn't question unless the parties do. It's not like subject matter jurisdiction that the court's gonna sua sponte dig into, right? That was a case where the party said, we're okay on this front. This is not what we're challenging. And that's why it wasn't decided, right? Well, that's potentially true. But the courts could have sua sponte raised the applicability of the exclusion to avoid reaching the federal preemption question that was decided. In the interest of judicial efficiency, it was certainly plausible for the New York courts to say, we're not gonna reach this weighty, complex issue of federal preemption of the statute because this exclusion doesn't apply. And also, of course, the parties seeking coverage in that action would have absolutely argued that the exclusion doesn't apply on the merits if they had a plausible argument. That's argument one. And then argument two is 3420D. That's the safe harbor when you're stuck with an exclusion that applies. But regardless, even if that is not a binding precedent, you would say that if you say, this policy does not apply to bodily injury to an employee of any insured arising out of it in the course of employment by the insured, the insured refers back to any insured and therefore could be any one of the insured. Yes. And it was clear in my brief, I'm not suggesting that NACOS is binding on this court, but it is instructive. And the error in the decision is not even acknowledging it or setting forth why this court should not give it any weight, let alone full weight. Thank you very much. Thank you both. And we will take the matter under advisement.